In the

# United States Court of Appeals

For the Seventh Circuit

_____

No. 17-1659

RICHARD D. DOERMER,

                  *Plaintiff-Appellant*,

*v.*

OXFORD FINANCIAL GROUP, LTD.,

                  *Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 CV 8248 — **Manish S. Shah**, *Judge*.

_____

ARGUED NOVEMBER 29, 2017 — DECIDED MARCH 7, 2018

_____

Before WOOD, *Chief Judge*, and KANNE, *Circuit Judge*.[1]

WOOD, *Chief Judge*. Family disputes over who owns what are depressingly common—indeed, they are the stuff of the legal practice of many an estate lawyer. Richard Doermer and his sister, Kathryn Doermer Callen, are living examples of this

---

[1] Circuit Judge Ripple recused himself after oral argument and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

phenomenon. The two siblings have spent the better part of the past decade embroiled in legal disputes about how to manage their family's fortune. A little over a year ago, Richard and Kathryn appeared before this court after Richard sued his sister and his nephew on behalf of a family nonprofit foundation over which Richard sought greater control. *Doermer v. Callen*, 847 F.3d 522 (7th Cir. 2017). We affirmed the district court's dismissal of that action because Richard lacked capacity to bring a derivative action under Indiana law.

Now Richard has returned. This time his suit is about the family trust, not the family foundation. And rather than suing his sister directly, Richard has targeted his sister's financial advisor, Oxford Financial Group. He alleges that Oxford gave Kathryn negligent advice, which caused her to mismanage the trust. Richard further seeks to compel Kathryn to join the suit challenging her own financial decisions, by purporting to name her an "involuntary plaintiff" in the matter.

We need not wade into the dispute over the soundness of Oxford's financial advice or Kathryn's ultimate trust-management decisions, because Richard, once again, lacks capacity to pursue this suit under state law and thus fails to state a claim on which relief can be granted.

I

Richard, who is a citizen of Illinois, and Kathryn, who is a citizen of Indiana, are the only children of Richard T. and Mary Louise Doermer. They are also the beneficiaries of a multi-million dollar trust that their now-deceased parents established for their children and grandchildren. The trust has three trustees: Richard, Kathryn, and a corporate trustee (currently Bankers Trust). When their father passed away in 2010,

Richard and Kathryn fell into "irreconcilable" disputes about how to manage the trust and invest its assets. About a year later, Kathryn hired Oxford, an Indiana corporation, to advise her about how to handle the trust and resolve the feud with her brother. The trust paid Oxford's fees.

In March 2012, Oxford advised Kathryn that the best solution to her dispute with her brother was to divide the trust in two, creating one trust for Kathryn and her children, and another for Richard and his. Richard eagerly accepted this proposal. As part of the proposal, Kathryn and Richard agreed to move the situs of the trust from Indiana to South Dakota, presumably to take advantage of South Dakota's more favorable laws.

The siblings spent the next several months haggling over the finer details of asset division. Ultimately, they could not agree on the terms of a petition to divide the trust. When Kathryn refused to sign Richard's proposed agreement in the fall of 2012, he petitioned a South Dakota state court to order that the trust be split in half. The court did not grant his request, and the trust remains intact to this day.

Richard complains that he has "suffered great losses from disbursements and benefits that he and his family lineage would have been entitled to receive" had he been allowed to pursue his high-risk, high-reward investment strategy in 2012. Richard alleges that the reason his sister refused to sign the trust-division agreement is because she received negligent advice from Oxford. If Oxford had not given Kathryn poor financial advice, he asserts, she would have accepted his proposed agreement and, as a result, the trust (or, rather, Richard's half of the trust) would have earned an additional

$2 million in "reasonable investment opportunities during a Bull Market."

In July 2016, Richard sued Oxford in Illinois state court on behalf of the trust; he alleged that he was suing in his capacity as both a beneficiary of the trust and a co-trustee. His complaint sets forth two counts: (1) "breach of fiduciary duty and negligence," and (2) "gross negligence and wilful [*sic*] and wanton misconduct." The complaint identifies Kathryn as an "involuntary plaintiff." Aside from sending Kathryn a letter, in which a copy of the complaint and a request that she join as a plaintiff was enclosed, however, Richard took no steps to bring her into the litigation. Oxford was properly served.

Oxford removed the case to federal court on the basis of diversity jurisdiction and then promptly moved to dismiss Richard's complaint under Federal Rule of Civil Procedure 12(b)(1). It argued that Richard lacks capacity to bring suit on behalf of the trust under state law. The district court handled Oxford's motion to dismiss under Rule 12(b)(6) rather than 12(b)(1), correctly explaining that capacity problems implicate a plaintiff's ability to state a claim, not the district court's subject-matter jurisdiction. *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2013); see also *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 820 (7th Cir. 2016) ("[W]hen appropriate, a court may treat a motion filed under Rule 12(b)(1) as if it were a Rule 12(b)(6) motion.").

Before turning to the merits of the capacity issue, the district court noted that there was a dispute about which state's law should control. Oxford argued that the trust agreement's choice-of-law clause required the court to apply South Dakota law, while Richard pushed for Illinois law, the law of the fo-

rum state. Applying Illinois choice-of-law principles, the district court decided that South Dakota substantive law governed, since South Dakota is the situs of the trust. It noted, however, that the outcome would be the same no matter which of those two state laws applied, because there were no significant differences between them.

The district court then granted Oxford's motion to dismiss. It held that Richard could not sue Oxford in his capacity as trust beneficiary, because state law prohibits a trust beneficiary from suing a third party on behalf of a trust (absent special circumstances that Richard did not allege). The district court also found that Richard could not sue Oxford in his capacity as co-trustee, because both state law and the trust agreement require a majority of trustees to consent to such a suit and that consent was missing. Richard now appeals, and we affirm.

## II

Richard's first assault on the judgment is one we must entertain: he says that the district court lacked subject-matter jurisdiction. Because this case arises under state law, the district court had jurisdiction only if every plaintiff is diverse from every defendant. 28 U.S.C. § 1332(a). Richard asserts that Kathryn is an "involuntary plaintiff" whose presence destroys diversity jurisdiction because she, like defendant Oxford, is a citizen of Indiana. He is wrong.

We note at the outset that joinder of parties is a procedural matter that is governed by federal law in federal courts, and there is nothing in the Federal Rules of Civil Procedure that permits a plaintiff unilaterally to force another party to join his lawsuit as an involuntary plaintiff. It is possible to name a

person as a defendant, serve that person with process, and then ask the court to realign the parties, but that is not what Richard did. It is also possible for a district court to compel the joinder of a party under Federal Rule of Civil Procedure 19(a), but Richard did not ask the district court to do that, either. Even if he had, the district court would have turned down the request. Nothing in the record suggests that Kathryn is a party who should be joined if feasible within the meaning of Rule 19. See *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999) (explaining the standards used to determine whether a person fits the Rule 19 profile). Moreover, not even Rule 19 requires the addition of a person who would destroy subject-matter jurisdiction. To the contrary, Rule 19(b) calls on the district court to decide whether the case can go forward without that person and offers a number of adjustments that may be (and often are) possible.

To the extent that Richard's argument involves a capacity issue rather than a question of party joinder, we note that there is no such thing as an "involuntary plaintiff" in the forum state, Illinois. If an Illinois plaintiff wants to force another person to participate in his lawsuit, he must join that person as a defendant, even if her interests are materially identical to his own. 735 ILCS 5/2-404; *Whitney v. Mayo*, 15 Ill. 251, 255 (1853). South Dakota law is the same. Like the federal system, South Dakota allows a person to be joined as an involuntary plaintiff only when that person's presence is essential for proper adjudication of the case. *Busselman v. Egge*, 2015 S.D. 38, ¶ 6 (2015); SDCL § 15-6-19(a).

In the face of this adverse authority, Richard contends that a century-old Supreme Court decision, *Independent Wireless*

*Telephone Co. v. Radio Corp. of America*, 269 U.S. 459 (1926), requires us to recognize an involuntary-plaintiff proceeding in his case. Again, he is mistaken. In *Independent Wireless*, the Court allowed a patent holder to be joined involuntarily as a plaintiff in an equitable suit brought by the patent's exclusive licensee, on the ground that "both the owner and the exclusive licensee are generally necessary parties in the [patent infringement] action in equity." *Id.* at 466. But the 1966 amendments to Federal Rule of Civil Procedure 19 abrogated this holding by altering the criteria for when a person "must be joined as a party," and spelling out the consequences that follow if joinder is not feasible. Other reasons also undermine the relevance of *Independent Wireless*. Richard's suit is not equitable in nature and does not involve either federal law (let alone the idiosyncrasies of patent law) or failure to join a critical party. His case is simply a state-law suit seeking money damages. Neither the Supreme Court nor any court of which we are aware has suggested that a federal court must allow a non-party to be forced to join as a plaintiff in a suit arising under state law.

Richard's alternative theory for the lack of diversity jurisdiction is that the trust itself is the "real party in interest," and that the trust takes the citizenship of all its trustees (including Kathryn). The fatal problem with this theory is that traditional trusts such as the one at issue here—as opposed to so-called "business trusts," which are a newer invention—were not considered distinct legal entities at common law, and hence cannot sue or be sued in their own name. *Americold Realty Trust v. Conagra Foods*, 136 S. Ct. 1012, 1016 (2016). Instead, legal proceedings involving these trusts must be "brought by or against the trustees in *their* own name[s]." *Id*. (emphasis added). As the Supreme Court repeatedly has explained,

when a trustee of a traditional trust "files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes." *Id*. (citing *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 462–66 (1980)). Thus, we may look only to Richard's citizenship, not the citizenship of his co-trustees. Because plaintiff Richard and defendant Oxford are citizens of different states, the district court's diversity jurisdiction was secure.

The last possible bar to this court's review on the merits is appellate jurisdiction. With exceptions not pertinent to this case, we may exercise appellate review only over "final decisions of the district courts of the United States." 28 U.S.C. § 1291. Although the parties overlooked this issue in their briefs, finality was in doubt because the district's order dismissing Richard's complaint was "without prejudice." "We have gone so far as to say that dismissals without prejudice are canonically non-final." *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008) (quotation marks omitted). When we questioned Richard's counsel about this problem at oral argument, he stipulated that Richard will not refile or attempt to amend his complaint (or take any other such action in the district court). That stipulation lifts any cloud that existed on our appellate jurisdiction. *Cf. India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 657 (7th Cir. 2010) (a party can satisfy section 1291's finality requirement by "unequivocally" stipulating to dismissal with prejudice). We may thus move on to the capacity issue.

### III

Federal Rule of Civil Procedure 17(b)(3) explains that a plaintiff's capacity to sue on behalf of a trust is "determined … by the law of the state where the [federal district] court is located." Here, that state is Illinois, and so we apply Illinois

law. (It is true, as Oxford argues, that an Illinois court might invoke choice-of-law principles to apply South Dakota substantive law if there were outcome-determinative differences between the laws of the two jurisdictions. See *Townsend v. Sears*, 227 Ill. 2d 147, 155 (2007). But there is no indication of any such difference in this case. Both Illinois and South Dakota follow the Restatement of Trusts, and we are aware of no conflict between the court decisions or statutes in the two states when it comes to capacity-to-sue questions.)

Illinois law bars Richard from suing Oxford in his capacity as a trustee without the consent of at least one of his co-trustees—consent that he has not obtained. 760 ILCS 5/10 (requiring consent of a majority of trustees to act on behalf of a trust); *Madden v. Univ. Club of Evanston*, 97 Ill. App. 3d 330, 332 (1981) ("[A] co-trustee cannot exercise a joint power individually."). The requirement for majority agreement whenever a trustee acts on behalf of a trust is also codified in Article VIII, § 8-C(25)(e) of the written trust agreement.

Given that Richard cannot sue Oxford on behalf of the trust in his capacity as a co-trustee, the only way he might have capacity to bring suit is through his status as a trust beneficiary. In general, a trust beneficiary may not sue a third party on behalf of the trust. American Law Institute, Restatement (Third) of Trusts § 107 (2012). Some jurisdictions, including Illinois, recognize an exception to this rule in cases where the trustee could maintain an action against a third party but improperly refuses to bring suit. See *id.*, § 107 cmt. c(2). *In re Estate of Zivin*, 2015 IL App (1st) 150606, ¶ 16 (2015). Nevertheless, a "trustee's refusal to pursue a claim on behalf of a trust is 'improper' only where it was a breach of the trustee's fiduciary duties not to pursue the claim." *In re*

*Estate of Brantman*, 2011 IL App (2d) 101137-U, ¶ 32 (citing *Axelrod v. Giambalvo*, 129 Ill. App. 3d 512, 519 (1984)); see also *Zivin*, 2015 IL App (1st) at ¶ 26.

Richard has not alleged any facts suggesting that either Kathryn or the corporate trustee breached a fiduciary obligation to the trust by not joining his suit against Oxford. In fact, as the district court explained in its final opinion, Richard never addressed his beneficiary status at all in the proceedings below, even after Oxford raised the issue as an affirmative defense. Even if we thought that Richard could qualify for an exception to the general rule that beneficiaries cannot sue third parties on behalf of a trust (and we do not), his failure to address his beneficiary status before the district court results in waiver. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012).

## IV

Because Richard has not alleged facts that would enable him to sue a third-party on behalf of the trust, he has failed to state a plausible claim for relief. Although we lack the power to prevent the Doermer family from acting out a real-life version of *Jarndyce v. Jarndyce*,[2] we agree with the district court that the present action should go no further. The decision of the district court is AFFIRMED.

---

[2] See generally Charles Dickens, *Bleak House* (Bradbury & Evans, 1853) ("[T]he whole estate is found to have been absorbed in costs[!]").